Ludeling, C. J.
Tbe plaintiff sued the defendants for damages for slander of title. Tbe bank for answer asserted title in itself, and Cavaroc filed a general denial.
*308 By this answer the bank changed the suit into a petitory action, in which it became plaintiff, and it must succeed or fail on the strength of its own title. To this answer (or petition) Bidwell pleaded the prescription oí ten and thirty years.
The record shows that in 1804 the Widow Collet owned the property in question. In that year she parted with her title; and it is contended by the bank that this case must be determined by deciding who was the transferee of the Widow Collet — Jean Maserat, or his wife, Marie Savant — as the adverse titles presented are claimed to be derived from them
This position of the bank is not correct, as it assumes that it holds a title derived from one of those parties, which is not admitted or proved, and it further assumes that a title by prescription has not been acquired .
The bank acquired its title at a probate sale of the estate of Christoval Toledano, on the seventh of May, 1870. C. Toledano, it is alleged, acquired from Laden Herman, assignee of Holmes & Mills, bankrupts, at public sale by the United States Marshal, on the twentieth June, 1842. Holmes & Mills bought from the heirs of Marie Savant, on the ninth of June, 1835. The heirs of Marie Savant were put in possession ol the property by a judgment of court in the suit of Widow Maserat (Marie Savaut) v. J. A. Mascey, tutor et al. Mascey was tutor of his child, Eosalie Matilde, to whom the property had been bequeathed by her grandmother in June, 1822. The title under which the minor held was an unbroken chain from twenty-fifth November, 1805, and under the judgment just mentioned the minor was dispossessed in 1835. In 1842 the said judgment was declared null and void for want of citation, and the said Eosalie Matilde Mascey was put in possession under a judgment of a court of competent jurisdiction, on the fifteenth June, 1842, a few days before the property was adjudicated by Herman, assignee, to Christoval Toledano.
Eosalie Matilde Mascey retained possession until eighteenth June, 1859, when she sold to Mrs. Belknap. Mrs. Belknap sold to one Sylvester, who sold to the plaintiff Bidwell.
Possession was never given to Toledano, and so far as this record shows, he never made an effort to get possession of the property; and in November, 1846, four years after the alleged sale to Toledano by the assignee of Holmes & Mills, the said assignee sued Matilde Eosalie Mascey for this property, claiming that it belonged then to the estate of said bankrupts, and that she was preventing him from selling the properly for the benefit of the creditors. This suit was dismissed on technical grounds; it is referred to only to show that long after the pretended sale to Toledano, his alleged vendor claimed the property *309 as that of the estate represented by Mm. Even if the parol evidence that the price paid by Toledano had been returned by the assignee,, because he could not deliver the property to Toledano, be disregarded, still we are convinced by the following facts that the title to him was never completed: The judgment under which Marie Rosalie Mascey was dispossessed in 1835, was annulled in 1842, and she was restored; to her possession just before the marshal’s sale to Toledano. Toledano, the adjudicatee at that sale, was never put in possession of the property, and although he lived in the place where the property is situated, more than twenty years after the alleged sale to him, he never máde an effort to get possession of the property, or to assert title to.it, and about four years after the alleged sale, the assignee Herman, his vendor, sued for the property as already stated.
We think that the bank has failed to prove a valid title in its favor. But if the bank had shown that it had acquired a valid title at the marshal’s sale, the plaintiff has acquired a valid title since then by prescription.
It appears that in June, 1859, Marie R. Mascey sold this property to Mrs. Belknap, and Mrs. Belknap and her vendees held possession under titles translative of property and apparently good, till the institution of this suit in July, 1870. More than ten years had elapsed from the commencement of Mrs. Belknap’s possession, and there is nothing in the record to show that she and her vendees were not possessors in good faith. The plea of prescription should be maintained.
It is therefore ordered and adjudged that the judgment of the lower court be reversed and annulled, and that there be judgment in favor of Henry Bidwell, decreeing him to be the owner of the property described in the petition, and for costs.